NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | **Criminal No. 14-00672 (SRC)** |
| v. | : | |
| | : | |
| LUIS FIGUEROA | : | **OPINION & ORDER** |
| | : | |

**CHESLER**, District Judge

　　This matter comes before the Court upon the omnibus pretrial motion filed by Defendant Luis Figueroa ("Defendant" or "Figueroa") [ECF 174]. The United States of America (the "Government") has filed its response to the motion.  The Court has considered the written submissions and determined that oral argument is not necessary. It rules on the various motions as follows.

I.　　**OPINION**

　　A.　**Background**

　　The criminal action against Figueroa stems from his alleged attack on his ex-girlfriend ("Victim 1") and her sister ("Victim 2"), as well as his allegations of kidnapping, vaginal rape, and oral rape of Victim 1. Further, as part of his attempt to escape, Figueroa also allegedly attacked a United States National Park Service employee ("Victim 3") employed at the Kittatinny Point Visitor's Center, and then allegedly burnt down his workplace. All of these incidents are charged as having occurred on June 6, 2014. Subsequently, on November 19, 2014, a six-count indictment was filed, which charged Figueroa with the following crimes:

1

Kidnapping, in violation of 18 U.S.C. § 1201(a)(1) (Count One); Use of a Firearm During and in

Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Count Two);

Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1) (Count

Three); Aggravated Sexual Abuse, in violation of 18 U.S.C. § 2241(a)(1)-(2) (vaginal rape)

(Count Four); Assaulting an Employee of the United States, in violation of 18 U.S.C. § 111(a)(1)

and § 111(b) (Count Five); and Malicious Damage and Destruction of Property by Fire, in

violation of 18 U.S.C. § 844(i) (Count Six).

Later, pursuant to a plea agreement, Figueroa pled guilty to Counts One, Three, Five, and

Six, and the Government agreed to a term of 312 months' imprisonment. The Plea Agreement

expressly stated that the Government would not pursue the Aggravated Sexual Abuse and Use of

a Firearm During a Crime of Violence charges if Figueroa pled guilty, but that those charges

would be reinstated should the judgment of conviction not remain in full force and effect. The

Plea Agreement also provided that:

> [I]n the event that a guilty plea in this matter is not entered for any reason or the
> judgment of conviction entered a result of this guilty plea does not remain in full force
> and effect, Luis Figueroa agrees that any dismissed charges and any other charges that
> are not time-barred by the applicable statute of limitations on the date this agreement is
> signed by Luis Figueroa [April 18, 2018] may be commenced against him,
> notwithstanding the expiration of the limitations period after Luis Figueroa signs the
> agreement.

Luis Figueroa Plea Agreement (April 18, 2018) (Ex. 1 to Govt.'s Opp'n Br.), at 2.

A few months later, on August 8, 2018, Figueroa filed a motion to withdraw his guilty

plea, which was granted by the Court on December 19, 2019. The action was then reinstated and

a trial date was set for June 15, 2020. The trial has since been adjourned, in part to due to the

COVID-19 pandemic. However, in the meantime, on May 28 2020, Figueroa filed a motion to

dismiss the original indictment. As a result, on September 16, 2020, the Government filed a Superseding Indictment, which now charges him with eight counts: Kidnapping, in violation of 18 U.S.C. § 1201(a)(1) (Count One); Aggravated Sexual Abuse, in violation of 18 U.S.C. § 2241(a)(1)-(2) (vaginal rape and oral rape) (Counts Two and Three); Use of a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Counts Four and Five); Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1) (Count Six); Assaulting an Employee of the United States, in violation of 18 U.S.C. § 111(a)(1) and § 111(b) (Count Seven); and Malicious Damage and Destruction of Property by Fire, in violation of 18 U.S.C. § 844(i) (Count Eight).

Then, on January 15, 2021, Figueroa filed this omnibus motion, which seeks the following relief: dismissal of the Superseding Indictment in its entirety; disclosure of Federal Rule of Evidence 404(b) materials; disclosure of certified copies of witness convictions; disclosure of Jencks materials; disclosure of <u>Brady</u> materials; bifurcation or severance of the felon in possession count; disclosure of discovery materials pursuant to Rule 16 of the Federal Rules of Criminal Procedure; compelled preservation of prosecutorial rough notes and records; and the right to file additional motions at a later date. Further, in his reply brief, Defendant also requested that the Court set a motion schedule as to any potential Speedy Trial violations. The Court will address each of these requests in turn.

**B.  Discussion**

**a.  Defendant's Motion to Dismiss the Superseding Indictment in its Entirety**

As Defendant's first request in his omnibus motion, he seeks to dismiss the Superseding Indictment. In support of this request, Defendant makes three separate arguments. First, Figueroa

argues that Counts Three through Six of the Superseding Indictment are time-barred under the relevant statute of limitations periods. Second, Figueroa also claims that Counts Two, Three, and Seven of the Superseding Indictment are invalid. Finally, Figueroa asserts that the Superseding Indictment resulted from prosecutorial vindictiveness, and thus that the entire Superseding Indictment must be dismissed. The Court will consider each of these arguments separately.

*i.   Whether Counts Three Through Six are Time-Barred*

As for Defendant's first point, he claims that Counts Three through Six of the Superseding Indictment are time-barred under the relevant statute of limitations period. These counts, which charge Figueroa with aggravated oral rape, use of a firearm during and in relation to a crime of violence, and possession of a firearm by a convicted felon, all normally carry a five-year statute of limitations period, as non-capital offenses. See 18 U.S.C. § 3282 ("Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed."). Figueroa's alleged offenses occurred on June 6, 2014. While the original indictment was brought on November 19, 2014, certainly within the limitations period, because Counts Three through Six were either not present in the original indictment or have been amended in some way since then, Defendant argues that they are time-barred – as the Superseding Indictment with these counts was only filed on September 16, 2020, more than five years after Figueroa's alleged illegal acts. Nevertheless, the Government asserts that Defendant waived the limitations period for these charges in his plea agreement.

4

More specifically, Figueroa originally pled guilty to certain counts of the original indictment – those that charged him with kidnapping, illegal possession of a firearm, assaulting a United States employee, and malicious damage and destruction of property by fire. As part of this original plea agreement, the Government agreed not to charge Figueroa with the two other counts in the original indictment – aggravated vaginal rape and use of a firearm during and in relation to a crime of violence. In turn, Figueroa then agreed that "in the event that a guilty plea in this matter [was] not entered for any reason or the judgment of conviction entered as a result of this guilty plea [did] not remain in full force and effect," that the statute of limitations for "any dismissed charges and any other charges" that were not time-barred by the applicable statute of limitations on the date the agreement was signed (April 18, 2018) would be waived, allowing such charges to be "commenced against him, notwithstanding the expiration of the limitations period after [Defendant] sign[ed] the agreement." Luis Figueroa Plea Agreement (April 18, 2018) (Ex. 1 to Govt.'s Opp'n Br.), at 2. While Figueroa claims that, because he later withdrew his guilty plea, this waiver no longer applies, this argument must fail.

It is a "'well-established principle that plea agreements, although arising in the criminal context, are analyzed under contract law standards.'" United States v. Castro, 704 F.3d 125, 135 (3d Cir. 2013) (quoting United States v. Goodson, 544 F.3d 529, 535 n.3 (3d Cir. 2008)). Thus, while plea agreements are generally strictly construed against the government when it has drafted the agreement, "'under contract principles, a plea agreement necessarily works both ways. Not only must the government comply with its terms and conditions, but so must the defendant.'" Id. (quoting United States v. Corso, 549 F.3d 921, 927 (3d Cir. 2008)). "Under the law of this circuit, [a defendant] cannot renege on his agreement.'" United States v. Erwin, 765

F.3d 219, 231 (3d Cir. 2014) (quoting United States v. Cianci, 154 F.3d 106, 110 (3d Cir. 1998)).
As such, "a defendant cannot 'get the benefits of his plea bargain, while evading the costs
because contract law would not support such a result.'" Castro, 704 F.3d at 135 (quoting Corso,
549 F.3d at 927). See also United States v. Basking, No. 20-1333, 2021 WL 1227742, at *2 (3d
Cir. Mar. 31, 2021) (finding that the defendant was judicially estopped from bringing up a
Speedy Trial argument, as he had previously consented to and benefitted from the granting of
motions to extent the speedy-trial deadline, as a means to give the parties more time to work out
a potential plea agreement); Erwin, 765 F.3d at 231 (quoting United States v. Wenger, 58 F.3d
280, 282-83 (7th Cir. 1995) ("'Empty promises are worthless promises; if defendants could
retract their [appellate] waivers . . . then they could not obtain concessions by promising not to
appeal . . . to put it colloquially, [the defendant] cannot have his cake and eat it too.'").

        The importance of upholding the clear terms of a plea agreement has even just recently
been restated by the Third Circuit in United States v. Yusuf, where it explained that "a defendant
should not be permitted 'to get the benefits of [his] plea bargain, while evading the costs[,]' [as] .
. . failure to 'enforce a plea agreement against a breaching defendant . . . would have a corrosive
effect on the plea agreement process.'" No. 19-3472, 2021 WL 1232080, at *6 (3d Cir. Apr. 2,
2021) (quoting United States v. Bernard, 373 F.3d 339, 345 (3d Cir. 2004)). The court went on to
say further:

>        "Because a plea agreement is a bargained-for exchange, . . . we reach the same
> conclusion when a defendant breaches a plea agreement as we would reach if the
> government breached." To hold otherwise would leave the government with no
> meaningful recourse if it performed its side of the agreement but did not receive the
> benefit of the deal in return, potentially leading to a chilling effect on plea bargaining
> overall[,] . . . [which] would be intolerable . . .

Id. at *9 (quoting United States v. Williams, 510 F.3d 416, 422-23 (3d Cir. 2007)). For these

reasons, the court concluded that "'[w]hen a defendant stipulates to a point in a plea agreement,

he is not in a position to make . . . arguments [to the contrary].'" Id. at *6 (quoting Bernard, 373

F.3d at 345).

Based on this idea—that criminal defendants must be held accountable for what they

bargain for in plea agreements—courts have previously held that a statute of limitations can be

waived through a plea agreement. For example, the Third Circuit explained in United States v.

Levine that "[i]t is . . . possible for a defendant knowingly and intelligently to waive the statute

of limitations, thus sanctioning a later indictment which, absent such a waiver, would be

untimely." 658 F.2d 113, 120-121 (3d Cir. 1981). Nonetheless, such waivers should "be made

with advice of counsel and informed by an understanding of the consequences of waiver." Id. at

124 n.17. The D.C. Circuit has held the same way – explaining that "the settled law in [the D.C.]

circuit has been that a criminal statute of limitations is not jurisdictional in nature and therefore

can be waived, [particularly] . . . 'where . . . the defendant followed the advice of competent

counsel and executed an express written waiver prior to the expiration of the statute of

limitations.'" United States v. Wilson, 26 F.3d 142, 156 (D.C. Cir. 1994) (quoting United States

v. Wild, 551 F.2d 418, 419 (D.C. Cir. 1977)).

The Third Circuit has even endorsed the use of such waivers in situations similar to the

case at hand, that is, in order to avoid "encourage[ing] defendants to delay acting on their rights,"

such as by "withdraw[ing] or challeng[ing] the[ir] guilty plea," in a way that may cause statute of

limitations issues for the government down the road. United States v. Gilchrist, 215 F.3d 333,

339 (3d Cir. 2000). The Third Circuit in Gilchrist also pointed to the Second Circuit's analysis in

7

United States v. Podde, which explained that the government can avoid statute of limitations problems when trying to reindict a defendant who successfully withdrew a guilty plea "by securing waivers of the statute of limitations in its plea agreements." 105 F.3d 813, 814-15 (2d Cir. 1997).

However, Defendant nevertheless claims that the waiver here is not applicable – relying primarily on two cases which can be distinguished from the facts at hand here. In the first, United States v. Ciavarella, 716 F.3d 705, 734 (3d Cir. 2012), the Third Circuit found that a waiver of the statute of limitations in a plea agreement was nullified, but its conclusion was based on the fact that the trial court had *rejected* the plea agreement, causing the parties' withdrawal from it. Here, the Court never rejected the plea agreement – rather, it was accepted, and Figueroa later decided to withdraw his plea. As such, this case is not comparable to Figueroa's situation. The second case relied upon by Figueroa, United States v. Podde, also does not support his argument. Rather, while the court there found that the government could not reindict the defendant who had withdrawn his guilty plea because the limitations period had expired, the defendant there did not sign an *explicit* waiver of the limitations period. Podde, 105 F.3d at 821. Rather, the government there argued in favor of an implicit waiver. Id. However, as discussed above, the court there did note that the government could have avoided this issue in the future "by securing waivers of the statute of limitations in its plea agreements." Id. Here, the Government has not argued in favor of an implicit waiver. Instead, it followed the Third Circuit's advice in Podde and entered into an explicit waiver with Figueroa to waive the statute of limitations. As such, both of these cases are factually distinguishable from the matter at hand and do not support Figueroa's conclusion.

Then, in determining whether Figueroa's statute of limitations waiver should apply with full force here, the Court will now utilize the same analysis that has been used by the Third Circuit in determining whether to apply other types of waivers in plea agreements, such as appellate waivers. More specifically, the Third Circuit in Castro set forth a three-step analysis for reviewing appellate waivers in plea agreements: "'whether (1) the issues on appeal fall within the scope of the waiver[;] . . . (2) whether the defendant knowingly and voluntarily agreed to the waiver[;] . . . [and] (3) whether enforcing the waiver would work a miscarriage of justice.'" 704 F.3d at 135. Here, the only distinction will be that the first step must be to analyze whether the disputed counts (not the issues on appeal) fail within the scope of the waiver.

As for the first step, the language of the waiver here is extremely broad – as it states that if "a guilty plea in this matter [was] not entered *for any reason*," Figueroa agreed to waive the statute of limitations for "any dismissed charges and *any other charges*" that were not time-barred at the time the agreement was signed in 2018. Luis Figueroa Plea Agreement (April 18, 2018) (Ex. 1 to Gov't's Opp'n Br.), at 2 (emphasis added). The current factual scenario clearly falls within the broad scope of this waiver. Figueroa's guilty plea was not entered, because he withdrew it, and the disputed charges were not time-barred in 2018, as that was only approximately four years into the five-year limitations period.

Nevertheless, Figueroa claims that the vacatur of his guilty plea nullified the waiver, relying on the following language from the plea agreement: "[s]hould the Court at any time reject the plea . . . or act contrary to its terms, either party may elect to be relieved of the terms of this plea and the parties will be returned to the status prior to the entry of the plea." Luis Figueroa Plea Agreement (April 18, 2018) (Ex. 1 to Gov't's Opp'n Br.), at 2. In particular,

9

Figueroa asserts that by allowing him to withdraw his guilty plea, the Court "act[ed] contrary" to the terms of the plea agreement. However, it is clear that this provision from the plea agreement was meant to relieve the parties of their obligations under the agreement if *the Court* was the one to void the agreement in some way. Here, the party that instigated the withdrawal of the guilty plea was the defendant himself. While the Court accepted his decision to withdraw his plea, it did not reject the plea agreement nor make the actual decision to have the plea withdrawn. Rather, Figueroa chose to withdraw his plea, causing it to not to be entered, and thus triggering the waiver of the limitations period.

Then, Figueroa asserts that, even if the waiver is to be applied, it should be read more narrowly to only waive the limitations period for the counts included in the original indictment, not those that have been added to the Superseding Indictment. This argument must fail as well. As support for this argument, Figueroa points to United States v. Wilson, a case in which the D.C. Circuit held that waivers of a statute of limitations can be permissible but found that one aspect of the alleged crime in that case did not fall within the scope of the purported waiver. 26 F.3d at 156, 161. However, this case is not relevant here, since, as explained, the disputed charges fall within the very broad scope of the waiver.

Moreover, in the Third Circuit's latest precedential decision relating to this issue, United States v. Smukler, the court emphasized the "self-eviden[ce]" of paying great attention to the actual "language of a contract," as opposed to adopting "an unnaturally narrow reading of [an] agreement" when the language of the agreement itself is broad. 991 F.3d 472, 490 (3d Cir. 2021). There, the defendant had entered into a tolling agreement with the government as to charges "arising out of" a specific payment to an election campaign and was later charged with

illegal campaign contributions based on that one payment, as well as two other prior payments. Id. at 481. Because the normal statute of limitations period had already run for all three of those payments, the key question was whether the tolling agreement applied to all three of the payments, not just the third one that was mentioned expressly in the agreement. Id. at 489. The Third Circuit ultimately concluded that the tolling agreement covered all three of the alleged payments, focusing primarily on the broad language in the agreement ("arising out of"), as well as the fact that the agreement put the defendant on fair notice of those charges being brought. Id. at 490-491. As such, the court explained that, even if the defendant "assumed a narrower reading[,] [that] is not relevant, as [the court's] role is to 'focus not on intent, but on words.'" Id. at 491 (quoting United States v. Damon, 933 F.3d 269, 273 (3d Cir. 2019)). Here too, the Court must focus on the explicit language of the waiver in the agreement, which waived the limitations period for "any other charges" that were not time-barred at the time the agreement was signed, which encompasses *all* of the disputed counts in this motion. Luis Figueroa Plea Agreement (April 18, 2018) (Ex. 1 to Govt.'s Opp'n Br.), at 2.

Then, because all of the disputed counts fall within the scope of the waiver, the Court must next consider whether Defendant entered into the waiver knowingly and voluntarily. In his reply brief, Defendant does not argue that the waiver was not knowing and voluntary, rather, he only argues that the Government has failed to establish this point. However, the Government has ultimately shown that Figueroa entered into the waiver knowingly and voluntarily, with the Court record supporting this conclusion as well. As the Government pointed out, before accepting Figueroa's original guilty plea, the Court ensured that Figueroa had carefully read the entire plea agreement, that he understood it, and that his decision to plead guilty was "free and

voluntary." Govt.'s Sur-Reply Br. at 3. Further, Figueroa was represented by counsel at the time, which also serves as evidence that his decision to sign the waiver was knowing and intelligent. Moreover, even when the Court later allowed Figueroa to withdraw his plea, it explained that its decision was not based on "any doubt on Mr. Figueroa's competency" to make decisions relating to his case. Govt.'s Sur-Reply Br. at 3. Indeed, the Court had also previously found Figueroa competent to stand trial in 2017, based on a psychological examination. As such, Figueroa's waiver of the statute of limitations period for the disputed charges was knowing and voluntary.

Finally, as for the third step, courts only find something to be a miscarriage of justice in this context "'sparingly and without undue generosity.'" Castro, 704 F.3d at 136 (quoting United States v. Wilson, 429 F.3d 455, 458 (3d Cir. 2005)). Due to the rarity in which this exception is applied, as well as the fact that Defendant has not asserted that it would be a miscarriage of justice to apply the waiver in the way in which the Government has argued, it is clear that it would not be a miscarriage of justice in any way to apply the waiver to the disputed counts. In sum, the waiver will be upheld, and thus the disputed charges, Counts Three through Six, are not time-barred, and therefore cannot be dismissed on that basis.

　　　　　　ii.　　*Whether Count Two (Vaginal Rape) and Count Three (Oral Rape) are Insufficient*

Next, Defendant avers that Count Two of the Superseding Indictment, which charges him with aggravated sexual abuse based on vaginal rape, is facially invalid. Similarly, Defendant asserts that, even if Count Three of the Superseding Indictment, which charges Figueroa with aggravated sexual abuse based on oral rape, is not time-barred, it is also facially invalid. In support of this argument, Figueroa points to the fact that, with regard to these counts of aggravated sexual abuse, the Superseding Indictment "fails to state the force used and/*or* specific

threat made *during* the alleged sexual assault or that it [force] was *used to complete* the offense." Def.'s Br. at 23 (emphasis in original). However, this level of detail is not required in an indictment, causing this argument by Defendant to fail.

Defendant is correct that, according to the Third Circuit, "[a]ggravated sexual abuse [under 18 U.S.C. § 2241] requires the jury to 'find that the defendant (1) actually *used force* against the victim *or* (2) that he made a *specific kind* of threat – i.e. that he threatened or placed the victim in fear of death, serious bodily injury, or kidnapping.'" United States v. Shaw, 891 F.3d 441, 448 (3d Cir. 2018) (quoting Cates v. United States,  882 F.3d 731, 737 (7th Cir. 2018) (emphasis in original)). This explanation by the Third Circuit expressly follows the statutory language of Section 2241. See 18 U.S.C. § 2241(a)(1)-(2):

> Whoever, in the special maritime and territorial jurisdiction of the United States . . . knowingly causes another person to engage in a sexual act—(1) by using force against that other person; or (2) by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping . . . [shall be subject to a term of imprisonment].

However, it is important to distinguish between what is required to be found by a jury to support a conviction, versus what level of detail is needed to support an indictment. While it is true that a prosecutor seeking a conviction on this type of charge must demonstrate to the jury that the defendant actually used force or made a specific kind of threat contemplated by the statute, this same level of detail is not required at the indictment stage.

> [Rather,] an indictment [is] sufficient so long as it '(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution.'

United States v. Kemp, 500 F.3d 257, 280 (3d Cir. 2007) (quoting United States v. Vitillo, 490 F.3d 314, 321  (3d Cir. 2007)). "Moreover, 'no greater specificity than the statutory language is

required so long as there is sufficient factual orientation to permit the defendant to prepare his

defense and to invoke double jeopardy in the event of a subsequent prosecution.'" Id. (quoting

United States v. Rankin, 870 F.2d 109, 112 (3d Cir. 1989)). Further, "[i]t is generally sufficient

that an indictment set forth the offense in the words of the statute itself, as long as 'those words

of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all

the elements necessary to constitute the offence intended to be punished.'" Hamling v. United

States, 418 U.S. 87, 117 (1974) (quoting United States v. Carll, 105 U.S. 611, 612, (1882)).

As such, while the Superseding Indictment does not state the particular type of force used

by Defendant to complete the alleged offenses, or the specific threat made by Defendant during

the alleged sexual assaults, it nevertheless is sufficient for indictment purposes – as it directly

parrots the elements of the statute, Section 2241, making it clear to Defendant what he was

charged with and allowing him to properly prepare his defense. See Superseding Indictment,

Counts Two and Three ("[D]efendant Luis Figueroa . . . did knowingly cause Victim 1 to engage

in a sexual act . . . by the use of force against Victim 1 and by threatening Victim 1 and placing

Victim 1 in fear that Victim 1 would be subjected to death, serious bodily injury, and

kidnapping.").[1] Further, the Superseding Indictment also includes sufficient factual information

to apprise Defendant of what factual circumstances these charges are based on, as it states the

---

[1] While Defendant also asserted in his reply brief that Counts Two and Three are insufficient in
that they do not properly establish that the jurisdictional element of Section 2241 was met, the
Court will not consider this argument, as it was not included in Defendant's original moving
papers. As a matter of procedure, this Court will not accept arguments offered for the first time
in the reply brief, as they were not properly discussed in the opening brief and the opposing party
has not had the opportunity to respond to them.  Anspach v. City of Phila., 503 F.3d 256, 258 n.1
(3d Cir. 2007) ("…[F]ailure to raise an argument in one's opening brief waives it.").

date and location of the alleged offenses, as well as what type of sexual acts occurred. Therefore, because Counts Two and Three of the Superseding Indictment draw directly from the relevant statutory language, these counts are sufficient and will not be dismissed.

>     *iii.   Whether Count Seven (Assaulting an Employee of the United States) is Insufficient*

As to Count Seven, which charges Figueroa with assaulting an employee of the United States, here too Figueroa claims that this count is insufficient and that it fails to properly state an offense. Under 18 U.S.C. § 111, one is liable for assaulting certain employees when he "forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties . . ." 18 U.S.C. § 111(a)(1). As was the case with the counts addressing Defendant's alleged sexual assaults, here as well, Count Seven draws directly from the relevant statutory language (here, 18 U.S.C. § 111). See Superseding Indictment, Count Seven ("[D]efendant Luis Figueroa did knowingly and forcibly assault, resist, oppose, impede, intimidate, and interfere with an employee of the United States, namely, Victim 2, an employee of the United States National Park Services, while Victim 2 was engaged in the performance of Victim 2's official duties . . ."). Nevertheless, Figueroa asserts that Count Seven fails to properly state an offense under Section 111, particularly because this Count does not directly mention 18 U.S.C. § 1114, the statute that Section 111 points to for the definition of what types of employees are protected under Section 111. This argument lacks adequate support.

As previously explained, generally, all that is required to sufficiently charge an offense in an indictment are the elements of the offense (here, Section 111), which can be drawn directly from the language of the charging statute, as the Superseding Indictment does here. While the

15

Superseding Indictment does not directly cite Section 1114, it nonetheless "'without any uncertainty or ambiguity, set[s] forth all the elements necessary to constitute the offence intended to be punished.'" Hamling, 418 U.S. at 117 (quoting Carll, 105 U.S. at 612). This is because, while Count Seven does not expressly mention Section 1114, it uses the exact language of the statute. More specifically, Section 1114 discusses acts against "any officer or **employee of the United States** or of any agency in any branch of the United States Government . . ." 18 U.S.C. § 1114 (emphasis added). Similarly, Count Seven states that the assault was against "**an employee of the United States**, namely Victim 2, an employee of the United States National Park Service." Superseding Indictment, Count Seven (emphasis added). As such, because Count Seven uses the statutory language of both Section 111 and Section 1114,[2] it sufficiently sets forth the elements of the offense, and thus will not be dismissed.

> iv.   *Whether the Superseding Indictment Resulted from Prosecutorial Vindictiveness*

Next, Defendant also asserts that the Superseding Indictment was a result of prosecutorial vindictiveness, and thus that it must be dismissed in its entirety. A presumption of vindictiveness can only be adopted "in cases in which a reasonable likelihood of vindictiveness exists[,]" that is when "the situation presents a reasonable likelihood of a danger that the State might be retaliating against the accused for lawfully exercising a right." United States v. Esposito, 968 F.2d 300, 303 (3d Cir. 1992). "Where there is no such reasonable likelihood, the burden is on the defendant to prove actual vindictiveness." Id. The Third Circuit has listed certain scenarios

---

[2] Further, while Defendant also points to 28 C.F.R. §§ 64.1-64.2, which discuss categories of employees that are regarded as being protected under Section 1114, this regulation does not appear to narrow the scope of Section 1114 itself, and thus this regulation is irrelevant in this context.

where it might be proper to utilize this presumption, such as when a defendant who successfully

attacked his first conviction is later given a more severe sentence by the court after a new trial,

without "reasons [given] based on objective information for doing so," or when a defendant

asserts a right to a trial de novo and the government substitutes a more serious charge for the

original one. Id.

> [However,] [t]here is good reason to be cautious before adopting an inflexible
> presumption of prosecutorial vindictiveness *in a pretrial setting*. In the course of
> preparing a case for trial, the prosecutor may uncover additional information that
> suggests a basis for further prosecution or he simply may come to realize that information
> possessed by the State has a broader significance. At this stage of the proceedings, the
> prosecutor's assessment of the proper extent of prosecution may not have crystallized. In
> contrast, once a trial begins—and certainly by the time a conviction has been obtained—
> it is much more likely that the State has discovered and assessed all of the information
> against an accused and has made a determination, on the basis of that information, of the
> extent to which he should be prosecuted. Thus, a change in the charging decision made
> after an initial trial is completed is much more likely to be improperly motivated than is a
> pretrial decision.

United States v. Goodwin, 457 U.S. 368, 381 (1982) (emphasis added). Then, even if a

presumption of vindictiveness is ultimately applied, "the government may rebut it by proffering

legitimate, objective reasons for its conduct." Esposito, 968 F.2d at 305.

Here, Defendant certainly has not shown actual vindictiveness. Then, even a presumption

of a vindictiveness is not appropriate – as Defendant has not demonstrated a reasonable

likelihood of a danger that the government might be retaliating against him for withdrawing his

guilty plea and filing a motion to dismiss the original indictment. Rather, the Government has

demonstrated "legitimate, objective reasons for its conduct," Esposito, 968 F.2d at 305, that is,

that after Defendant pointed out certain problems with the original indictment based on changes

in the law since 2014, the Government reindicted him as a means to cure those problems.

Further, the Government has also alleged that, because the Superseding Indictment was handled

by different prosecutors than the one who originally indicted Figueroa in 2014, the evidence was
reevaluated, causing the new prosecutors to decide to add the additional counts. This type of
change is exactly what the Supreme Court considered in its explanation in Goodwin as to why
presuming prosecutorial vindictiveness in a pretrial setting is generally inappropriate. As the
Supreme Court stated, "[i]n the course of preparing a case for trial, the prosecutor may uncover
additional information that suggests a basis for further prosecution or he simply may come to
realize that information possessed by the State has a broader significance." Goodwin, 457 U.S. at
381. One would presume that the chances of this happening would be even greater in this
context, where different prosecutors took over the case, leading to a new set of eyes reviewing all
of the relevant information. As such, no presumption of vindictiveness may be applied, and thus
this cannot support a finding that the Superseding Indictment ought to be dismissed. In sum,
because all of Defendant's arguments in favor of dismissing the Superseding Indictment (either
in part or entirely) fail, the Superseding Indictment will be upheld in its entirety.

### b.  Defendant's Request for Disclosure of 404(b) Evidence

Next, in addition to Defendant's motion to dismiss the Superseding Indictment, he also
seeks disclosure of Rule 404(b) evidence. More specifically, while Defendant states that it is
currently unknown whether the Government will seek to introduce evidence of other crimes or
bad acts in its case in chief pursuant to Federal Rule of Evidence 404(b), he argues that the
Government should be compelled to disclose all Rule 404(b) evidence it anticipates using at least
forty-five days before trial. The Government opposes this request as premature, particularly in
light of the fact that no trial date has yet been scheduled. Rule 404(b) requires that, upon a
defendant's request, the prosecution must provide "reasonable notice" of Rule 404(b) evidence

that it intends to offer at trial. Fed. R. Evid. 404(b)(3). Further, pursuant to District of New

Jersey Standing Order No. 15-2 at ¶¶ 17 and 19, the timing of that notice should be set at a final

pretrial conference held no sooner than two weeks after the disposition of pretrial motions. As

such, at this time, the Court will not compel the Government to disclose Rule 404(b) evidence

and will instead set a time for this disclosure at the final pretrial conference.

### c. Defendant's Request for Disclosure of Certified Copies of Witness Convictions

Figueroa has also requested that the court compel the Government to disclose, prior to

trial, certified copies of the conviction records, if any, for each person who will provide

testimony at his trial. The Government asserts that this request is overbroad and that it need only

turn over convictions that it deems relevant for impeachment purposes, and that any questionable

convictions may be sent to the Court for in-camera review. This conclusion by the Government

is incorrect, and the Court instead directs the Government to supply Defendant with the

conviction information of any potential witnesses, as well as any other impeachment material

that must be disclosed pursuant to Giglio v. United States, 405 U.S. 150 (1972), no later than ten

days prior to the start of trial. However, the relevant information as to any such convictions will

suffice, and the Government need not provide Defendant with certified copies.

### d. Defendant's Request for Disclosure of Jencks Materials

Pursuant to the Jencks Act, Defendant seeks prior statements and reports by Government

witnesses, as well any notes by the witnesses, and further asks that the Government produce such

Jencks Act materials forty-five days prior to trial. Under the Jencks Act, the Government is not

obligated to provide a witness's prior statements until the completion of the witness's direct

examination. 18 U.S.C. § 3500. As such, Defendant's request for the compelled production of

Jencks materials prior to trial is denied as premature. However, the Government has stated that it has already turned over a large amount of Jencks materials and will continue to do so in a timely manner in advance of any Government witness's testimony. Therefore, in order to avoid prolonging or delaying proceedings at the time of trial, the Court encourages the Government to continue to provide Defendant with Jencks materials in a sufficiently timely manner to permit counsel an opportunity to prepare cross-examination of Government witnesses.

### e.   Defendant's Request for Disclosure of <u>Brady</u> Materials

Defendant also seeks disclosure of materials and evidence as required by <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). The Government has recognized its obligation under <u>Brady</u> to disclose exculpatory evidence in its possession in a prompt and timely manner, that is, in sufficient time for its use at trial. The Government further indicates that it has thus far complied with this obligation and adds that, going forward, the Government will supply Defendant with the required exculpatory material should any come into its possession. The Court considers this response by the Government as adequately addressing Figueroa's request for <u>Brady</u> disclosures.

### f.   Defendant's Request to Bifurcate or Sever the Felon in Possession Charge

Defendant has requested that his charge for possession of a firearm by a convicted felon, Count Six of the Superseding Indictment, should be bifurcated at trial, so that the jury may hear about and consider Defendant's prior felony conviction only if it has first concluded that he possessed a firearm.  The Government agrees with Defendant on this point, and thus the Court finds that that the felon in possession charge under Count Six of the Superseding Indictment will be bifurcated and tried only after the remaining counts have been resolved.

20

**g. Defendant's Request for Disclosure of Discovery Materials**

Defendant's motion also includes a request that the Government continue to produce any materials that it has a duty to disclose under Rule 16 of the Federal Rules of Criminal Procedure. While Defendant avers that disclosure of evidence should not be limited to the following pieces of evidence, he does specifically request disclosure of the following: the location of the Dodge Journey Vehicle, information from three cell phones seized from Defendant, the police report written during an interview conducted with Defendant while he was detained at the Columbia Presbyterian Hospital following his arrest, any rape kit evidence, all other forensic evidence, the names and addresses of all potential Government witnesses, any certified judgments of convictions of Defendant, all EZ-Pass records from the day of, and six months prior to, the date of Defendant's arrest, and a copy of an order dismissing the original indictment filed by the Government in 2014. The Court will address each of these points in turn.

*i.   The Location of the Dodge Journey Vehicle*

Beginning with Defendant's request that the Government disclose the location of the Dodge Journey Vehicle, the Government has informed the Court that this vehicle was previously released to Figueroa's family. As such, this request is denied as moot.

*ii.   Information from the Three Cell Phones*

Then, Defendant has also requested that the Government disclose the information found on the three cell phones seized from Figueroa. According to the Government, extractions were not possible from two of the phones (the two T-Mobile HTC phones). As for the third phone, an iPhone, based on the Government's thorough examination of the phone, it appears that this phone did not belong to Defendant at or near the time of the commission of the crimes, and that

21

it does not contain any information pertaining to Defendant. As such, the Government is correct that Defendant is not entitled to the information on the iPhone. Therefore, Defendant's request for the information on these cell phones is denied.

### iii.    The Police Report from Columbia Presbyterian Hospital

Defendant also seeks disclosure of the police report written during an interview conducted with Defendant while he was detained at the Columbia Presbyterian Hospital. However, given that the Government has stated that that it is unaware of the existence of any such report, this request is denied as moot.

### iv.    Rape Kit Evidence

Defendant requests that the Government disclose to him any rape kit evidence, including those from New York and Pennsylvania. The Government has informed the Court that it has previously turned over all rape kit reports pertaining to Victim 1. Further, the Government has stated that while it is still ascertaining whether any photographs were taken, if it determines that any were taken, it will provide a copy to Defendant. The Court considers this response by the Government as adequately addressing Figueroa's request for disclosure of rape kit evidence.

### v.    All Other Forensic Evidence

Defendant further requests disclosure of all other forensic evidence. The Government has stated that it has previously turned over to Defendant all of the forensic reports within its possession. Further, the Government has confirmed that, should it obtain additional reports, it will disclose those to Defendant in a timely manner. Moreover, the Government has explained that it will provide to Defendant any expert reports and accompanying information with

sufficient notice prior to trial. The Court considers this response by the Government as adequately addressing Figueroa's request for disclosure of all other forensic evidence.

### vi.   The Names and Addresses of Witnesses

Defendant has requested disclosure of the names and addresses of all potential Government witnesses. In its response, the Government explained that Defendant has already been provided with police reports with witnesses' names and statements. However, the Government also asserts that, both because this is not a capital case, and because of safety concerns for the victims, Defendant is not entitled to the addresses of the witnesses. The Court agrees with the Government's conclusion and, thus, this request by Defendant is denied.

### vii.   Any Certified Judgments of Convictions of Defendant

Next, Defendant has requested disclosure of any certified judgments of convictions of Defendant. The Government has stated that it will turn over all of Defendant's certified judgments of convictions once a trial date has been set, and the Court considers this response by the Government as adequately addressing Figueroa's request. Further, the Government has requested a hearing pursuant to Fed. R. Evid. 609 one week prior to trial to determine which of Defendant's prior convictions would be admissible should he choose to testify. The Court grants this request and will hold such a hearing one week prior trial.

### viii.   EZ-Pass Records

Defendant also seeks disclosure of all EZ-Pass records from the day of, and six months prior to, the date of his arrest on June 6, 2014. However, given that the Government has stated that that it is not in possession of any such records, this request is denied as moot. Nevertheless, as the Government has stated that, should Defendant require these records for his defense, that it

has no objection to his issuing a subpoena for them, Defendant may choose to issue a subpoena for these records.

ix.   *A Copy of an Order Dismissing the 2014 Indictment*

Defendant seeks a copy of an order dismissing the original indictment filed by the Government in 2014. Being that the 2014 indictment had not previously been formally dismissed, and the Government has stated that it has no objection to the entry of an order dismissing the 2014 Indictment, the Court so orders that the original 2014 Indictment [ECF 12] is dismissed.

### h.   Defendant's Request for Compelled Preservation of Prosecutorial Rough Notes and Records

Figueroa has requested that the Government preserve any rough notes, draft reports, and final reports prepared by agents in this case. Figueroa has further requested that the Court review these documents in-camera, and then order disclosure to the Defendant of any such materials deemed relevant forty-five days before trial. The Government correctly states that it has no obligation to disclose such materials, unless the material falls within the disclosures required by Brady or the Jencks Act. Further, the Government has indicated that agents have been directed to preserve their interview notes and handwritten drafts of reports. This sufficiently addresses any concern should an issue arise as to the need to review or disclose the material. However, there is no indication at this time that an in-camera review of such notes is warranted. Thus, the Court denies Defendant's request at this time.

### i.   Defendant's Request for the Right to File Additional Motions

Defendant has requested the right to make any additional motions at a later date. The Government does not oppose this request; however, it claims that any additional motions brought

24

by Defendant should be limited to issues raised by future Government disclosures. The Court agrees with the Government's assertion and orders that Defendant's right to file additional motions is limited to issues raised by any future disclosures by the Government.

### j. Defendant's Request for a Motion Schedule as to Speedy Trial Act Violations

Finally, while only mentioned in his reply papers, Defendant has requested that the Court set a motion schedule as to any Speedy Trial Act violations. At this time, the Court directs counsel for Defendant and counsel for the Government to meet and confer to provide the Court with a proposed motion schedule for any Speedy Trial Act Violations.

## II. ORDER

For the foregoing reasons, it is **SO ORDERED** that Defendant's omnibus pretrial motion [ECF 174] is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED**, therefore, that Defendant's omnibus pretrial motion d.e. 174,  is **TERMINATED**.

___s/ Stanley R. Chesler___
STANLEY R. CHESLER
United States District Judge

Dated: April 26, 2021